# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GARRETT BRYANT,

    Petitioner,          Case Number: 04-CV-74818-DT

                    Honorable Nancy G. Edmunds

v.

PAUL H. RENICO,

    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

   The petitioner, Garrett Bryant, a state inmate currently incarcerated at the St. Louis

Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his state convictions and sentences

for

(1) second-degree murder, (2) unarmed robbery, (3) uttering and publishing, (4) stealing a

financial transaction device, (5) second-degree home invasion, and (6) disinterment and

mutilation of a dead body.  He argues that (1) there was insufficient evidence presented to

convict him of second-degree murder, (2) he was denied a fair trial because of prosecutorial

misconduct, (3) the prosecutor improperly referred the jury to the law on aiding and abetting in

his closing argument when no such instruction was ever given to the jury, (4) the trial court

failed to properly instruct the jury regarding the burden of proof and the introduced evidence of

petitioner's own statement, (5) the trial court improperly admitted rebuttal testimony, and (6)

1

trial counsel was ineffective.  For the reasons stated below, the Court denies the petition.

## I. Procedural History

Petitioner was tried before a jury in the Wayne County Third Judicial Circuit Court, the Honorable George W. Crockett, III, presiding.  On June 8, 2001, he was sentenced to the following: 30 to 60 years for second-degree murder, 100 months to 15 years for unarmed robbery, 20 months to 14 years for uttering and publishing, 2 to 4 years for stealing a financial transaction device, 80 months to 15 years for second-degree home invasion, and 67 months to 10 years for disinterment and mutilation of a dead body.  All petitioner's sentences are to run concurrently.

Petitioner appealed as of right to the Michigan Court of Appeals, alleging the following:

I.     Defendant was deprived of his right under the U.S.Const. amend. XIV, and Mich. Const. 1963, art.1, § 17, not to be convicted of a crime save that the prosecution prove beyond a reasonable doubt each fact needed to constitute the crime charged when in this case he was convicted of murder of the second degree in the absence of proof adduced by the prosecution that beyond a reasonable doubt defendant was the one who shot to death the deceased.

II.    Defendant was deprived of his right to due process and to a fair trial under the U.S.Const. amend. XIV, and Mich.Const. 1963, art.1, § 17, when the prosecutor in argument to the jury (1) personally testified as to facts not in evidence, (2) personally vouched for the truthfulness and untruthfulness of witnesses, (3) misstated the law of aiding and abetting to the jury, (4) expressed his personal opinion as to the guilt of the defendant, and (5) shifted the burden of proof to defendant.

III.    Defendant was deprived of his right to due process and to a fair trial under the U.S.Const. amend. XIV, and Mich.Const. 1963, art.1, § 17, when the prosecutor in argument to the jury stated that the court would instruct on the law of aiding and abetting whereas the court did not and the prosecutor did not object.

IV.    Defendant was deprived of his right to due process and to a fair trial under the U.S.Const. amend. XIV, and Mich.Const. 1963, art.1, § 17, when the court (1) instructed the jury that they might convict if they were "satisfied" that defendant was guilty, and (2) instructed the jury that if they found defendant did not make

the incriminating statement ascribed to him they should not use the statement.

V.      Defendant was deprived of his right to due process and to a fair trial under the
        U.S.Const. amend. XIV, and Mich.Const. 1963, art.1, § 17, when the trial court
        permitted the prosecution to call as a rebuttal witness those who were not truly
        rebuttal witnesses.

VI.     Defendant was deprived of his right under the U.S.Const. amend. VI, and
        Mich.Const. 1963, art.1, § 20, to the effective assistance of counsel on the trial
        level when his trial counsel (1) failed to object to two erroneous jury instructions,
        and (2) failed to object to the prosecutor's prejudicial arguments to the jury.

The Michigan Court of Appeals affirmed petitioner's convictions on June 12, 2003, in an

unpublished *per curiam* opinion. *People v. Garrett Torron Bryant*, No. 236314 (Mich. Ct. App.

June 12, 2003). On June 16, 2005, the Michigan Supreme Court denied leave to appeal. *People

v. Garrett Torron Bryant*, No. 124364 (Mich. June 16, 2005). Petitioner filed the pending

petition for a writ of habeas corpus on the same grounds.

## II. Facts

This case arises out of the homicide of Kenneth McCauley. The police discovered

McCauley's body in the back of a vehicle, charred and burned. McCauley could only be

identified by his dental records.

The investigation of this case began when Police Officer Brandon Robinson went to the

McCauley residence on a police run, where he saw pools of blood in the yard and in the dog

corral, a pack of cigarettes and prescription glasses lying on the ground, along with broken glass

which appeared to come from a car window. (Trial Tr. 35-37, 39-40, May 3, 2001).

Around the same time, other police officers discovered a pick-up truck, which they

believed was involved in a homicide. It had a shattered front window, blood in the bed of the

truck, and a live round inside the truck car. (Trial Tr. 29-31, 33-34, May 3, 2001). The police

established that the pick-up truck belonged to McCauley, the deceased in this case.

During the investigation of this murder, the police discovered that McCauley's checks and ATM card were missing and in use–money was being withdrawn from his checking account, despite his being deceased. The police traced the checks and received information that led them to Garrett Bryant, the petitioner in this case. The checks were written out to and endorsed by petitioner and his aunt, Shirl Lee Hawkins. The police ran a name check and obtained the home address of petitioner. They telephoned the residence and spoke to a woman, who identified herself as petitioner's mother. The police informed petitioner's mother of the situation and told her that they wanted to speak to her son about his possible involvement in a murder.

Petitioner's mother contacted petitioner and told him what the officers told her. Petitioner told his mother to call the police officers back and tell them that he would voluntarily come to the station, but because he did not have transportation, they would need to pick him up. Petitioner's mother did as requested, and the police officers complied.

However, before picking up petitioner, the officers obtained search warrants for the home. When they arrived at petitioner's home, they searched the home, finding several items belonging to the deceased. Petitioner was then taken to the station. (Trial Tr. 156-163, May 2, 2001; Trial Tr. 43-57, May 3, 2001).

At the police station, petitioner was put into an interrogation room where he was questioned by Detroit Police Homicide Investigator Dale Collins. There, he gave a statement admitting that he planned to rob the deceased because he believed, on the basis of his relationship with the deceased's next-door neighbor, Salamah Welton, that he (McCauley) carried thousands of dollars on his person. Petitioner stated:

4

I went over on Fielding to the white man's house to rob him. I was sitting across the street when he pulled in, into his yard. He was getting out of his truck. I grabbed him. I said, give me your money. I don't know what he said, but he tried to jump back into the truck. I grabbed him and my fist hit the window and it broke. I threw him to the ground, took his money. It was about 30 dollars, 30 to 40 dollars. I jumped in his truck and backed out the yard. I was driving and I looked back. He was still laying on the ground. I came back, looked at him, he was still laying on the ground. I left again.

I came back and put him in the back of the truck. I drove over to my girlfriend's house. Her name is Temena. I got a sheet out of the house and covered the body. Then I went into the house and just sat there. My brother, Dwayne, came and looked at the body in the truck. He pulled me to the side and asked me what had happened. I told him I drove home and parked the truck in the garage with the white man in the back. The next morning myself and Shirl went to the bank and cashed some checks. The next day I put him in the van and took off the roll bar. Then I went to the ATM. And I used the card. The pin number was on the card. I got about 40 dollars. Then I went back home.

Later on that night I put the white man in a Delta 88 that I had taken sometime before. I put him in the trunk. The car didn't run, so Dwayne steered and I used the white man's truck to push the gold Delta. We pushed the car to Dequindre and Davison area. I poured some gas on the body and set it on fire. We then left and went home.

(Trial Tr. 57-58, May 3, 2001). When Investigator Collins specifically asked petitioner "How did the white man die?", petitioner responded, "I grabbed him, threw him to the ground, then I burned his body." (Trial Tr. 60, May 3, 2001). Petitioner signed and initialed the statement. Petitioner was then arrested.

At trial, petitioner's statement was admitted into evidence and read into the record by Investigator Collins. Defense counsel objected to its admission on the basis that petitioner was questioned after smoking marijuana and drinking alcohol. It was defense counsel's position that petitioner was intoxicated, and therefore, he did not understand what he was signing. Petitioner testified that he had two to three blunts of marijuana and two to three forty ounce beers before being arrested. He said that Investigator Collins told him that if he would sign the statement then

5

he would be released.  Petitioner signed the statement.  (Trial Tr. 114-116, May 7, 2001).

The prosecution called several witnesses whose testimonies corroborated that of petitioner's statement.  Petitioner's own stepbrother, Michael Terry, testified that he (1) knew petitioner's plan of robbing the deceased, (2) knew petitioner waited for the deceased to come home, broke the driver's side window out of his truck and beat him, (3) saw petitioner on the night of the alleged murder, (4) saw petitioner in a pick-up truck matching the description of the deceased's truck, (5) saw a body, fitting the description of the deceased, in the back of the pick-up truck that petitioner was driving, (6) saw the deceased bleeding from the head, and (7) heard petitioner's other brother telling him that something had to be done with the body.  (Trial Tr. 98-122, May 2, 2001).  The police officers testified that the driver's side window of the deceased's truck was shattered, that there was blood and glass in his yard, and blood in the bed of his pick-up truck.  (Trial Tr. 29-40, May 3, 2001).  Additionally, Officer Derryck Thomas intercepted a letter petitioner sent from the Wayne County jail addressed to his girlfriend stating, "Go ask my mother what day I go to court on.  Is you coming? You might have to get on the stand.  Remember you did not see no truck, body, or nothing, and I didn't make Mikey come outside and Kevin drop me off."  (Trial Tr. 155, May 3, 2001).

The medical examiner who performed the postmortem examination on the deceased testified that his examination revealed that the body of the deceased had been "badly burned" and that there was a "a gunshot wound to the head."  (Trial Tr. 56, May 2, 2001).  It was the doctor's opinion that the cause of death "was a through-and-through gunshot wound to the head."  (Trial Tr. 59, May 2, 2001).

6

The prosecution did not present any direct evidence regarding the gunshot wound to the deceased's head.  The only gun found was a BB gun found in petitioner's home to which petitioner testified that he took from the deceased's home.

The jury found petitioner guilty of all charges except felony murder.  Rather, it found petitioner guilty of second-degree murder.

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions.  Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief.  Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."  *Id.*

7

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, *supra* at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, *supra* at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, *supra* at 412.

## IV. Analysis

### A. Insufficient Evidence Claim

Petitioner contends that he is entitled to a writ of habeas corpus because the evidence presented at trial was insufficient to support a second-degree murder conviction since no evidence was presented that petitioner shot the deceased in the head.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the

8

enforcement of [petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672 (6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004).  This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie, supra* at 727.  This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense; however, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988).  Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The last state court to issue a reasoned opinion rejecting this claim, the Michigan Court of Appeals, held in pertinent part:

The elements of second-degree murder are: "(1) a death,

9

(2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-64; 579 NW2d 868 (1998). Defendant claims that the second element was not established. However, the circumstantial evidence and reasonable inferences arising from the evidence was sufficient to establish that defendant caused the victim's death. In particular, the evidence included that defendant's stepbrother (1) knew defendant planned on robbing the victim, (2) knew that defendant waited for the victim to come home and then broke the driver's side window out of the victim's truck and beat him on the day of the murder, (3) saw defendant on the night the victim was murdered, (4) saw defendant in a pickup truck that fit the description of the victim's truck, (5) saw a body that fit the description of the victim in the back of the pickup truck that defendant was driving, (6) saw the victim bleeding from the head, and (7) heard his other brother tell defendant that something had to be done with the body. Police officers testified that the driver's side window of the victim's truck was shattered, that there was blood, the victim's effects, and glass on the victim's yard, and blood in the bed of the victim's pickup truck in the same area that defendant's stepbrother saw the body. The letter defendant wrote to his girlfriend while in jail that was intercepted by police, along with defendant's statement to police, corroborated much of the testimony. In sum, viewed most favorably to the prosecution, the evidence was sufficient to support defendant's second-degree murder conviction.

*People v. Garrett Torron Bryant*, No. 236314, slip op. at 1-2 (Mich.Ct.App. June 12, 2003).

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent. As stated above by the Michigan Court of Appeals, under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *Goecke*, *supra* at 463-464. Petitioner contended that the second element was not established. However, the Michigan Court of Appeals found that the "caused by an act of the defendant" element was

satisfied by "the circumstantial evidence and reasonable inferences arising from the evidence was sufficient to establish that defendant caused the victim's death." *Bryant*, slip op. at 1.

In addressing petitioner's claim, the Michigan Court of Appeals considered the following facts: the testimony from petitioner's stepbrother, the testimony from the police officers, and the petitioner's own statement and letter to his girlfriend. The Michigan Court of Appeals held that, based on the foregoing facts, a rational trier of fact could have found petitioner guilty of second-degree murder beyond a reasonable doubt. That determination was itself correct and a reasonable application of *Jackson*, *supra*. Accordingly, petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### B.  Prosecutorial Misconduct Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for witness credibility, improperly claiming personal knowledge, improperly shifting the burden of proof, and misstating the applicable law. Respondent argues that these claims are barred by procedural default.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72 (1977). In *Wainwright*, the United States Supreme Court explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Id.* at 85.

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar

11

consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last explained state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing petitioner's claim, the court relied upon a state procedural bar–petitioner's failure to timely object to the prosecutor's conduct at trial.  Thus, petitioner's claims are barred for review.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  In this case, petitioner alleges ineffective assistance of counsel as cause to excuse his default.  Even assuming that petitioner could establish that counsel erred, by failing to object, however, he cannot establish that he was prejudiced as his claim of prosecutorial misconduct lacks merit.

Prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial before habeas corpus relief becomes available.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).  In this regard, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  Specifically, the Sixth Circuit takes into account "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive, whether they were

deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused." *Hamblin v. Mitchell*, 354 F.3d 484, 494-95 (6th Cir. 2003). "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

The inquiry is directed to deciding whether the state court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 124 S.Ct. 1825 (2004); *United States v. Payne*, 2 F.3d 706, 715-16 (6th Cir. 1993) (inflammatory remarks in opening and closing statements and throughout trial were not cured by cautionary instructions); *United States v. Roberts*, 986 F.2d 1026, 1031 (6th Cir. 1993) (closing argument that appeals to the community conscience was cured by instructions). The giving of cautionary instructions also factors into the calculus of determining whether fundamental fairness was denied. *Serra*, *supra* at 1356. Extensive prosecutorial misconduct during trial and during closing argument justifies the granting of a writ of habeas corpus. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).

However, where the evidence pointing to the defendant's guilt is strong and the prosecutor's improper comments go to the nature and intent of the crime, not to the defendant's guilt or innocence of the crime, the improper comments may be "error, but the jury would probably have returned the verdict of guilty anyway," and habeas relief is not warranted. *Hamblin*, *supra* at 495.

The Sixth Circuit has adopted a two-step approach in order to determine whether a defendant is entitled to a new trial based upon improper prosecutorial remarks made in closing argument. *See United States v. Carroll*, 26 F.3d 1380, 1385-90 (6th Cir. 1994). First, the court

13

should determine whether the remarks were improper by examining the context of the remarks and existing precedent. *Id.* at 1387-89. Second, it should determine whether the remarks were flagrant by applying the factors enunciated in *United States v. Leon*, 534 F.2d 667, 678-83 (6th Cir. 1976).

> Flagrancy is determined by an examination of four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused."

*Id. See also Boyle*, *supra* at 717 (quoting *Carroll*, *supra* at 549, 550). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

The Michigan Court of Appeals in this case found no error in the fifteen instances of alleged prosecutorial misconduct outlined by petitioner. This Court agrees and finds that decision is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. The prosecutor accurately stated his role in representing the State of Michigan. Although a prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge concerning the witness' truthfulness, any such references by the prosecutor in this case, even if erroneous, were not so flagrant as to warrant habeas relief. Further, the prosecutor's use of the phrase "I don't believe" did not mislead the jury or prejudice petitioner but rather, reflected a habit of speech. Moreover, a prosecutor may argue against a defendant's evidence without improperly shifting the burden of proof.

14

Petitioner also contends that he was deprived of a fair trial because, although the trial court agreed to give an aiding and abetting instruction to the jury but did not, the prosecutor improperly referred the jury to the law on aiding and abetting in his closing argument. The Michigan Court of Appeals found that the prosecutor's reference to the law on aiding and abetting in his closing argument was not error because the judge instructed the jury as to the law that it was to apply and told the jury that any attorneys' arguments are not to be viewed as evidence.

Therefore, under the circumstances of this case, the prosecutor's conduct was not so egregious or flagrant as to deprive petitioner of a fair trial. Accordingly, petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### C. Improper Jury Instructions Claim

Petitioner also claims that he is entitled to habeas relief because the trial court failed to properly instruct the jury. The Michigan Court of Appeals rendered the last reasoned opinion discussing the jury instructions and relied upon petitioner's failure to object to the instructions at trial in dismissing his claims.

As noted, habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, *supra* at 85. The failure to make contemporaneous objection is a recognized and firmly-established independent and adequate state-law ground for refusing to review trial errors. *See Coleman*, *supra* at 750-51. In this case, the Michigan Court of Appeals sufficiently relied upon the default, despite reviewing the claim for plain error. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

15

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, *supra* at 753. Petitioner alleges that trial counsel was ineffective as cause to excuse his default. Petitioner, however, cannot establish that counsel erred or that he was prejudiced because his jury instruction claim lacks merit.

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). If an instruction is ambiguous and not necessarily erroneous, it runs afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *Id.* at 72. State law instructional errors rarely form the basis for federal habeas corpus relief. *Id.* at 71-72.

In this case, the Michigan Court of Appeals stated in pertinent part:

> In any event, the jury instruction accurately stated the law. First, defendant takes issue with use of the word "satisfied" in the following jury instruction: "This presumption [of innocence] continues throughout the trial and entitles the defendant to a verdict of not guilty, unless you are **satisfied** beyond a reasonable doubt that he is guilty." However, this jury instruction followed verbatim the instruction provided by CJI2d 3.2, an instruction that has repeatedly been determined to adequately convey the concept of reasonable doubt, the presumption of innocence, and the burden of proof. See *People v Cooper*, 236 Mich App 643, 656; 601 NW2d 409 (1999); *People v Hubbard (After Remand)*, 217 Mich
>
> App 459, 487-88; 552 NW2d 493 (1996). Consequently,

16

> defendant has failed to establish manifest injustice warranting
> relief.  See *Cooper*, *supra*.

*Bryant*, slip op. at 3.

That decision is in accord with established federal law.  The United States Supreme

Court in *Victor v. Nebraska*, 511 1, 5 (1994) stated:

> [S]o long as the court instructs the jury on the necessity that the
> defendant's guilt be proved beyond a reasonable doubt, the
> Constitution does not require that any particular form of words be
> used in advising the jury of the government's burden of proof. * *
> * Rather, taken as a whole the instruction [must] correctly convey
> the concept of reasonable doubt to the jury. * * * [T]he proper
> inquiry is not whether the instruction could have been applied in
> an unconstitutional manner, but whether there is a reasonable
> likelihood that the jury did so apply it.

*Id.* at 5-6.

Petitioner also takes issue with the trial court's use of the words "should not" rather than

"must not" in another instruction.  Again, the Michigan Court of Appeals found no error of state

law:

> The Prosecution has introduced evidence of a statement
> that it claims the defendant made.  You cannot consider such an
> out-of-court statement as evidence against the defendant unless
> you do the following: First, you must find that the defendant
> actually made the statement as it was given to you.  If you find that
> the defendant did not make the statement at all, you **should not**
> consider it.
>
> This instruction was comparable to CJI2d 4.1 and served to
> accurately and adequately set forth the applicable law.  Defendant
> suffered no manifest injustice.

*Bryant,* slip op. at 3.

This Court agrees and finds that the Michigan Court of Appeals' decision is consistent

17

with Supreme Court precedent and constitutes a reasonable application thereof.  The jury instructions as a whole were adequate to protect petitioner's rights.  The jury was properly instructed.  Any misstatement by the judge to the jury was harmless.  Petitioner has not established that the jury instructions, read as a whole, rendered his trial fundamentally unfair.

Finally, petitioner has not established that a fundamental miscarriage of justice had occurred. *Bousley v. United States*, 523 U.S. 614, 624 (1998).  His jury instruction claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.  Here, the Michigan Court of Appeals determined that petitioner did not suffer manifest injustice because the jury instructions given set forth the applicable law.  Accordingly, petitioner is not entitled to habeas corpus relief with respect to this claim.

### D.  Improper Admission of Rebuttal Testimony Claim

Petitioner also alleges that he is entitled to habeas relief because the trial court improperly admitted the testimony of rebuttal witnesses.  In turn, respondent argues that petitioner was not denied a fair trial as a result, and the testimony of the witnesses was necessary to refute defendant's theory.

An issue concerning the admissibility of evidence or error in state procedure does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that petitioner was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 125 S.Ct. 126 (2004).  To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392,

18

1396 (6th Cir. 1994) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 297, 302 (1973)).

To the extent a petitioner's argument is based upon state law, the petitioner has failed to state a claim upon which habeas corpus relief may be granted. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A question concerning a perceived error of state law serves as a basis for habeas corpus relief only when the petitioner is denied fundamental fairness in the trial process. *Estelle*, *supra* at 67-68.

The rulings by a state's highest court with respect to state law are binding on the federal courts. *Wainwright*, *supra* at 84. Furthermore, the Supreme Court has "reemphasize[d] that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, *supra* at 68. The federal courts are bound by decisions of an intermediate state appellate court unless convinced that the highest state court would decide the issue differently. *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988).

Here, the Michigan Court of Appeals reviewed the admission of two of the rebuttal witnesses (police officers) for plain error (petitioner failed to object to the admission of the testimony from the police officers) and found that petitioner had failed to establish plain error because the testimony of those two witnesses was proper to refute defendant's theory. Regarding the testimony of the third witness, the Michigan Court of Appeals reviewed its admission for abuse of discretion, and found that the trial court did not abuse its discretion because his testimony refuted that of petitioner himself. Thus, the error under Michigan law complained of did not render petitioner's trial fundamentally unfair. Accordingly, petitioner is not entitled to habeas relief for this claim.

19

### E.  Ineffective Assistance of Counsel Claim

Finally, petitioner contends that he is entitled to habeas relief because trial counsel was ineffective.  Specifically, petitioner argues that counsel was constitutionally deficient for failing to (1) object to the jury instructions and (2) object to the prosecutor's prejudicial arguments to the jury.  Respondent contends that this claim lacks merit.

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, *supra* at 686).

20

The Michigan Court of Appeals denied petitioner relief on his ineffective assistance of counsel claim, finding that "the jury instructions were appropriate and adequate and the prosecutor's arguments were permissible; therefore, this issue is without merit." *Bryant*, *supra*, slip op. at 4.  That decision is neither contrary to *Strickland* nor an unreasonable application thereof.  Petitioner has not rebutted the presumption that trial counsel's conduct throughout the proceedings constituted sound trial strategy.  *See*, *e.g.*, *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (decisions as to what evidence to present and whether to call certain witnesses are matters of trial strategy).

Further, as to counsel's actions concerning matters previously addressed and deemed without merit in the state court's opinion, petitioner has failed to establish that he was prejudiced by counsel's conduct.  Petitioner has thus failed to satisfy the requirements of *Strickland* and is not entitled to habeas relief on his ineffective assistance of counsel claim.

### V.  Conclusion

For the reasons stated above, this Court concludes that petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly:

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  May 25, 2006

21

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager